**Gary R. BEAR, Appellee,**

v.

**Crispus C. NIX, Appellant.**

**Iowa Department of Corrections, Defendant,**

**Ken Bordeaux, Appellant.**

No. 91–3822.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 1, 1992.

Decided Oct. 23, 1992.

Layne M. Lindebak, Des Moines, Iowa, for appellant.

David Jay Lynch, Des Moines, Iowa, for appellee.

Before BOWMAN and LOKEN, Circuit Judges, and HUNTER,* Senior District Judge.

BOWMAN, Circuit Judge.

Gary R. Bear, a prisoner at the Iowa State Penitentiary (ISP), brought this civil rights action pursuant to 42 U.S.C. § 1983 (1988). He sought an order requiring the defendants, Warden Crispus C. Nix and Native American Religion (NAR) consultant Ken Bordeaux, to allow him to participate in NAR ceremonies at ISP.[1] The case was referred to the Honorable Ronald E. Longstaff,[2] United States Magistrate Judge for the Southern District of Iowa, for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1) (1988). After an evidentiary hearing, Magistrate Judge Longstaff filed a report and recommendation in which he recommended that judgment be entered in favor of the defendants.

Magistrate Judge Longstaff found that Bear is part Native American (Kiowa tribe), but less than the required amount to obtain a Bureau of Indian Affairs (BIA) enrollment number showing membership in a federally-recognized tribe. Bear practiced NAR sporadically as a youth but more regularly after his imprisonment in ISP in 1981. He stopped participating in NAR after the riots in ISP in September 1981, but then began regularly practicing NAR again in 1986. Bear occasionally acted as the firekeeper or doorkeeper for the sweat lodge until February 1988.

On February 2, 1988, ISP's hired NAR consultant, Ken Bordeaux, determined that only inmates with a BIA enrollment number would be allowed to practice NAR, thereby excluding Bear from the sweat lodge and other NAR observances solely because he does not have a BIA enrollment number. Bordeaux is an enrolled Native American and a recognized spiritual leader who had been under contract with ISP to oversee the administration and teaching of NAR since 1985. By hiring an NAR consultant and giving him full authority over NAR affairs in ISP, prison officials are able to remove themselves from the constitutionally sensitive task of deciding whether a particular prisoner is or is not qualified, according to the tenets of NAR, to participate in NAR ceremonies and otherwise to engage in NAR practices. ISP allows the NAR consultant complete discretion to determine NAR policy and practice.

Bear claimed that ISP's acquiescence in Bordeaux's decision had resulted in the denial of Bear's rights under the free exercise clause of the First Amendment. The magistrate judge, using the analytical framework provided by *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987), and *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), concluded that ISP's reliance upon the determinations of its NAR consultant was reasonably related to ISP's legitimate penological interests and thus did not violate Bear's right of free exercise of religion. The magistrate judge thus recommended that judgment be entered for the defendants and against Bear.

The District Court[3] accepted the magistrate judge's recommended findings of fact with one modification not relevant to the issues in this appeal,[4] and also agreed with

---

* The HONORABLE ELMO B. HUNTER, Senior United States District Judge for the Western District of Missouri, sitting by designation.

1. Some of the religious practices of NAR are the following: a purification rite which takes place in a sweat lodge; wearing a medicine bag and a headband or bandanna; and possession of sweet grass, sage, and eagle feathers.

2. On November 5, 1991, Magistrate Judge Longstaff took office as United States District Judge for the Southern District of Iowa.

3. The Honorable Harold D. Vietor, Chief Judge, United States District Court for the Southern District of Iowa.

4. This modification pertained to a statement by the magistrate that an individual must have one-quarter tribal blood to qualify for a BIA enrollment number. The District Court noted that each Native American tribe has its own fractional tribal blood requirement for a BIA enrollment number, and although the Kiowa tribe, through which Bear traces his Native American ancestry, requires one-fourth tribal blood, there are numerous other tribes that require a lesser fraction of tribal blood for a BIA enrollment number.

the conclusions of law set forth in the report and recommendation. The District Court found, however, that the magistrate judge's report did not reach the critical issue of whether the standard for participation in NAR that Bordeaux applied to Bear is more restrictive than the standard established in the court-approved settlement agreement between ISP and Native American inmates in *Walker v. Scurr*, Civil No. 83–313–D, and *Reinert v. Haas*, Civil No. 84–26–B (S.D.Iowa Feb. 27, 1990) (hereinafter *Walker* or "the settlement agreement").[5]

The District Court concluded that Bordeaux's exclusion of Bear for the sole reason that Bear does not have a BIA number is not consistent with the terms of the settlement agreement. Accordingly, the court rejected the recommendation of the magistrate judge that judgment be entered for the defendants, and instead entered a judgment requiring the defendants to determine Bear's eligibility for NAR activities in accordance with the settlement agreement. Nix and Bordeaux appealed to this Court. Because of certain representations made by counsel during oral argument of the appeal, we remanded this case to the District Court to determine whether the case had become moot. *Bear v. Nix*, 972 F.2d 353 (8th Cir.1992) (unpublished). We retained jurisdiction. On remand the District Court found, based on a joint stipulation filed by the parties, that although Bordeaux no longer serves as ISP's NAR consultant and ISP has hired a new NAR consultant, Bear still is not permitted to participate in NAR activities at ISP. The court therefore ruled that the case is not moot and certified its findings and conclusions to this Court.

We agree with the District Court that the case is not moot,[6] that ISP's reliance on a NAR consultant does not violate Bear's right of free exercise of religion, and that Bordeaux did not follow the scheme, as set out in the settlement agreement, to determine whether Bear is a Native American and eligible to practice NAR. Because of specific language used in the District Court's order, however, which incorrectly states the settlement agreement's standards for determining whether a would-be NAR participant is a Native American, we vacate the District Court's order and remand for the entry of a judgment consistent with this opinion.

I.

Bear's argument that as a matter of constitutional right and regardless of the *Walker* settlement agreement he is entitled to practice NAR is unsupported by the facts of this case. Bear relies on *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), in which the Supreme Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89, 107 S.Ct. at 2261. We believe his reliance is misplaced.

In *Safley*, prisoners brought a class action challenging the constitutionality of regulations promulgated by the Missouri Department of Corrections relating to inmate marriages and inmate-to-inmate correspondence. In the case at hand, however, Bear does not challenge any regulation promulgated by ISP. There is no regulation at ISP that prohibits Bear from practicing NAR. The only hurdle between Bear and his practice of NAR is his admittance by the Native American consultant. Therefore, Bear's challenge is to the Native American consultant's application of the tenets of NAR concerning eligibility for participation in NAR activities.[7]

---

5. The parties evidently did not bring the settlement agreement to the attention of the magistrate judge. Rather, it appears that this agreement was not raised by anyone until after the District Court had received the magistrate judge's report and recommendation. Despite the agreement's late entry into the case, its direct applicability is not in dispute.

6. By way of clarification, we note that Bear seeks only injunctive relief and that the case therefore is moot as to Bordeaux, who has been replaced as ISP's NAR consultant.

7. Bear makes no showing, nor does he even suggest, that officials at ISP have any constitutionally impermissible reason to deny him his right to practice NAR. Moreover, ISP officials

Bear does not allege that Bordeaux's decision resulted from malice, bad faith, or unconstitutional motive. Essentially, Bear's argument is that his evidence showing that he is a Native American is so compelling that any reasonable Native American consultant would allow him to practice NAR. Therefore, according to Bear, we should overturn the consultant's decision and order Bear's admittance to NAR activities at ISP. We disagree. In our view, the decision of the Native American consultant as to Bear's eligibility to practice NAR, which on this record must be assumed to have been made in complete good faith, represents an application of religious doctrine by a recognized spiritual leader of the relevant faith and thus is beyond the constitutional power of the civil courts to review. One of our recent cases illustrates this fundamental constitutional limitation on the judicial power. In *Scharon v. Saint Luke's Episcopal Presbyterian Hospitals*, 929 F.2d 360 (8th Cir.1991), this Court was asked to review a personnel decision of a church-affiliated hospital, where the hospital asserted, and had supporting evidence, that the decision in question resulted from the application of church doctrine and ecclesiastical authority. Affirming the trial court's dismissal of the plaintiff's action, we said:

> [T]o review such decisions would require the courts to determine the meaning of religious doctrine and canonical law and to impose a secular court's view of whether in the context of the particular case religious doctrine and canonical law support the decision the church authorities have made. This is precisely the kind of judicial second-guessing of deci-

sion-making by religious organizations that the Free Exercise Clause forbids. *Id.* at 363 (citations omitted). Similarly, we cannot become involved here in second-guessing the doctrinal merits of the Native American consultant's decision that Bear is not eligible to practice NAR.

## II.

■ We are not barred, however, from reviewing the NAR consultant's decision to see whether it has been reached in a manner consistent with the terms of the settlement agreement. Having conducted such a review, we are satisfied that the District Court's finding that Bordeaux did not proceed in a manner consistent with the settlement agreement is correct. The agreement's terms regarding membership, insofar as they are relevant to a proper understanding of the present case, are as follows:

> A. Inmates who are Native Americans are entitled to participate in Native American religious activities unless their participation would violate the tenets of the Native American religion. An inmate claiming to be Native American may do so by proof of an enrollment number in a Native American tribe or by proof of eligibility to be an enrolled member of a Native American tribe. In lieu of an enrollment number or proof of eligibility to be an enrolled member of a Native American tribe, *an inmate claiming to be Native American may offer other evidence, such as corroboration of tribal or family members, official records, physical appearance, prior participation in Native American activities, etc.*
>
> \* \* \* \* \* \*

have no say in whether Bear is eligible to practice NAR. Consistent with the *Walker* settlement agreement, ISP sought to avoid involvement in questions of religious doctrine by hiring a Native American spiritual leader as a NAR consultant and empowering the consultant to make the decisions concerning proper observance of NAR. The Native American consultant thus makes the decisions concerning who is eligible, as a matter of NAR doctrine, to practice NAR. This is a desirable arrangement, for it serves to spare the prison officials and the courts from excessive entanglement in religious

matters. *See Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). *See also Scharon v. Saint Luke's Episcopal Presbyterian Hospitals,* 929 F.2d 360 (8th Cir.1991) (applying Title VII and the Age Discrimination in Employment Act to age and sex discrimination claims brought against church-affiliated hospital by priest who was fired on religious grounds from her job as chaplain would violate the First Amendment by fostering excessive government entanglement with religion and would also violate the free exercise clause of the First Amendment).

B. If the Native American consultant has reason to believe that the participation of a Native American inmate in religious activities will violate the tenets of the Native American Religion, he shall inform the inmate of the reasons for that determination. The inmate may respond to the consultant's determination. The inmate shall be allowed to provide information about his own tribal customs and practices if relevant. In the event that the consultant concludes that a Native American inmate's participation would violate the tenets of the Native American Religion and the disqualified inmate disagrees, the inmate may grieve the consultant's action through the grievance procedure only to the extent that the inmate complains that he was not allowed to provide information to the consultant. No Department of Corrections employee will make any determination concerning participation or practice based upon an interpretation of the tenets of the Native American Religion.

*Walker,* at 3–5 (emphasis added).

These provisions set up what amounts to a two-step process. First, the inmate must establish that he qualifies as a Native American. But that is not necessarily the end of the inquiry, for paragraph B allows the consultant to disqualify even a Native American on the ground that his participation would violate the tenets of NAR. Here, the consultant's decision had the effect of excluding Bear at step one. As the District Court noted, Bordeaux's requirement that the prisoner have a BIA enrollment number in order to practice NAR eliminates two of the three ways set forth in paragraph A, *supra,* that the prisoner may persuade the Native American consultant that he should be regarded as a Native American for purposes of eligibility for participation in NAR activities. This obviously does not comport with the court-approved settlement agreement. We there-

fore agree with the District Court that Bear is entitled to have the Native American consultant make a fresh determination of Bear's status in a manner consistent with the settlement agreement.[8]

### III.

The judgment entered by the District Court includes a statement to the effect that for purposes of the settlement agreement a Native American is "a person of some Native American blood who genuinely self-identifies as a Native American." Order of Nov. 13, 1991, at 6. This statement is considerably broader than any language we can find in the settlement agreement, and we conclude that the wording used in the judgment cannot be squared with the plain language of the agreement. We find nothing to suggest, nor do we believe, that the District Court intended to modify the settlement agreement without the consent of the parties thereto, and we forego discussion of the question of the court's power to effect a unilateral modification of the agreement. As the District Court correctly recognized, the settlement agreement governs this case. We therefore vacate the present judgment and remand the case for the entry of a judgment by the District Court ordering Warden Nix to direct the Native American consultant to determine Bear's status in a manner consistent with the settlement agreement. This means that Bear must be given an opportunity to establish to the satisfaction of the consultant that Bear is a Native American through the "other evidence" method of proof as set out in paragraph A of the membership provisions of the settlement agreement.

We vacate the judgment of the District Court and remand for the entry of a new judgment consistent with this opinion.

---

**8.** We note that the settlement agreement did not come into existence until some two years after Bordeaux made his determination of Bear's status in February 1988. Thus our conclusion that Bordeaux's decision was reached in a manner inconsistent with the settlement agreement should not be read as being critical of Bordeaux. We hold only that Bear now is entitled to a determination by the Native American consultant in accordance with the settlement agreement.