**Rev. Anne SCHARON, Appellant,**

v.

**ST. LUKE'S EPISCOPAL PRESBYTERIAN HOSPITALS, a Corporation, and The Rev. J. Edwin Heathcock, Appellees.**

**No. 90–2070.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 9, 1991.

Decided March 25, 1991.

David M. Heimos, Clayton, Mo., for appellant.

Robert A. Kaiser, St. Louis, Mo., for appellees.

Before JOHN R. GIBSON, BOWMAN and WOLLMAN, Circuit Judges.

BOWMAN, Circuit Judge.

This is an employment discrimination case that runs headlong into the Religion Clauses of the First Amendment. The Reverend Anne Scharon, the plaintiff in this cause, appeals from the order of the District Court[1] granting summary judgment in favor of the defendants. We affirm.

## I.

The Reverend Anne Scharon, an ordained Episcopal priest, was employed by defendant St. Luke's Episcopal Presbyterian Hospitals as a Chaplain from June 1978 until October 2, 1987. She worked in the Department of Pastoral Care, under the supervision of defendant The Reverend J. Edwin Heathcock, also an ordained Episcopal priest, who was appointed the Director of the department in December 1986.

According the hospital's job description, one of the "principle [sic] duties and responsibilities" of a Chaplain is to "[p]rovide[ ] a religious ministry of pastoral care, pastoral counseling ... and liturgical services for persons in the hospital." Appendix at 109. Among the requirements for the position are that a Chaplain have a Master of Divinity degree from an accredited seminary and be ordained and endorsed by a "religious faith group." *Id.* As Chaplain, Scharon performed a wide variety of duties, both religious and non-religious. Besides providing counseling for patients, she performed, along with other religious tasks, over 350 religious solemn rites in one nine-month period. *Id.* at 107.

According to the defendants, Scharon was fired because Heathcock believed that she was violating several canonical laws. Heathcock took this action "with the advice and consent of the Episcopal Bishop." Appendix at 48. After she was fired, Scharon brought this case alleging that she was discriminatorily terminated on the basis of age and sex in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 630 *et seq.* (1988), and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. (1988). As to Scharon's ADEA claim, the District Court held that the ADEA does not apply because there is no clear Congressional intent to apply the ADEA to chaplain positions in a church-affiliated hospital. The District Court also held that Scharon's Title VII claim is precluded, because the resolution of the claim would require excessive entanglement in religious affairs in violation of the First Amendment. Scharon appeals both holdings.

## II.

Using the three-part analytical approach developed by the Supreme Court in *N.L.R.B. v. Catholic Bishop of Chicago*, 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979), we must first determine whether the application of the ADEA and Title VII to the present case "would give rise to serious constitutional questions." *Catholic Bishop*, 440 U.S. at 501, 99 S.Ct. at 1319. Without a doubt, the claims asserted by Scharon raise such questions. Secondly, we must decide whether the ADEA and Title VII apply to the case at hand, because "an Act of Congress ought not be construed to violate the Constitution if any other possible construction remains available." *Id.* at 500, 99 S.Ct. at 1318. For purposes of our analysis, we proceed on the understanding that both statutes are applicable.[2] Finally, our focus turns to whether

1. The opinion of the District Court is published as *Scharon v. St. Luke's Episcopal Presbyterian Hosps.,* 736 F.Supp. 1018 (E.D.Mo.1990).

2. It is clear that Title VII applies to the employment relationship in question here. *See Rayburn v. General Conference of Seventh–Day Adventists,* 772 F.2d 1164, 1167 (4th Cir.1985), *cert. denied,* 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986). It is less certain, however, whether the ADEA applies to this case. Although the ADEA definition of an employer is virtually identical to the definition used by Title VII, unlike Title VII there is no language in the ADEA nor any legislative history that we are aware of that indicates an intent by Congress to apply the ADEA to church-affiliated institutions.

these statutes constitutionally can be applied to the present facts. *Id.* at 499, 99 S.Ct. at 1318.

To decide this question, we apply another three-part test set out by the Supreme Court in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971). For a statute to withstand scrutiny under the Establishment Clause of the First Amendment, it first "must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion ... [and third] the statute must not foster 'an excessive government entanglement with religion.'" *Lemon,* 403 U.S. at 612–13, 91 S.Ct. at 2111 (citations omitted). It is clear that both the ADEA and Title VII have a secular purpose, and that neither has the principal or primary effect of advancing or inhibiting religion. *See Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter–Day Saints v. Amos,* 483 U.S. 327, 335–39, 107 S.Ct. 2862, 2867–70, 97 L.Ed.2d 273 (1987) (holding that Title VII's exemption for religious organizations discriminating on the basis of religion meets the *Lemon* test); *Rayburn,* 772 F.2d at 1170 n. 6 ("There is no question that Title VII meets the first two of these tests."). This case thus turns on whether applying Title VII and the ADEA to the present situation would require "excessive government entanglement with religion." We hold that it would.

Scharon argues that St. Luke's is not a religious institution and that she was a secular employee, not "clergy." She therefore claims that the application of Title VII and the ADEA would not require excessive government entanglement with religion. Scharon's assertions, however, are untenable. Based on facts not in dispute, the District Court concluded that St. Luke's is a church-affiliated hospital, with a "'substantial religious character.'" *Scharon,* 736 F.Supp. at 1019 (quoting *Lemon,* 403

U.S. at 616, 91 S.Ct. at 2113). We agree with that conclusion. The hospital's Board of Directors consists of four church representatives and their unanimously agreed-upon nominees. Appendix at 53, 55–56. Its Articles of Association may be amended only with the approval of the Episcopal Diocese of Missouri of the Protestant Episcopal Church in the United States of America and the local Presbytery of the Presbyterian Church (U.S.A.). *Id.* at 56. Importantly for our purposes, St. Luke's was acting as a religious institution as Scharon's employer, and Scharon's position as a Chaplain at St. Luke's was "clergy." While St. Luke's provides many secular services (and arguably may be primarily a secular institution), in its role as Scharon's employer it is without question a religious organization. As mentioned earlier, the job description of the Chaplain position at St. Luke's states that a Chaplain "[p]rovides a religious ministry of pastoral care, pastoral counseling ... and liturgical services for persons in the hospital." Appendix at 109. According to the job description, such work is seventy percent of a Chaplain's duties. *Id.* It cannot seriously be claimed that a church-affiliated hospital providing this sort of ministry to its patients is not an institution with "substantial religious character." *Lemon,* 403 U.S. at 616, 91 S.Ct. at 2113.

Similarly, the position of Chaplain at St. Luke's cannot be characterized as secular. Besides performing the aforementioned duties, Scharon was required to have been ordained by a "religious faith group." Appendix at 109. Her supervisor, The Reverend Heathcock, was an ordained priest. *Id.* at 47. As a Chaplain, Scharon performed numerous formal religious ceremonies. *Id.* at 107. It is without consequence that she also may have performed many secular duties. She was not a secular employee who happened to perform some religious duties; she was a spiritual employee who also performed some secular duties. Her

---

If the ADEA does not apply to such employers, as the District Court held, then Scharon's ADEA claim is foreclosed. If it does apply to an employer like St. Luke's, then our approach is the same as our analysis for her Title VII claim. Our holding today that the First Amendment forecloses the application of Title VII and the

ADEA to an employment decision by a church-affiliated hospital concerning a chaplain-employee is limited strictly to these circumstances. We leave for another day the question of whether the ADEA definitively applies to such employers in other contexts.

position as Chaplain is primarily a "ministerial" position; the performance of secular activities in that role does not diminish its religious nature. *Cf. Rayburn*, 772 F.2d at 1168 (fact that a lay minister performs same duties as a pastor does not diminish the religiosity of the pastor's position).

Scharon also argues that excessive entanglement can be avoided in this case because the defendants' claims that religious issues were the basis for her termination are merely a pretext for the actual motive behind her dismissal. Therefore, she asserts, government involvement with religion can be avoided by focusing solely on the issues of age and sex discrimination. However, as the Supreme Court said in *Catholic Bishop*, 440 U.S. at 502, 99 S.Ct. at 1319, "[t]he resolution of such charges ... will necessarily involve inquiry into the good faith of the position asserted by the clergy-administrators.... It is not only the conclusions that may be reached ... which may impinge on rights guaranteed by the Religion Clauses, but also the very process of inquiry." *See also Minker v. Baltimore Annual Conference of United Methodist Church*, 894 F.2d 1354, 1356–57 (D.C.Cir.1990) (In rejecting a minister's ADEA claim, the court noted that the "determination of 'whose voice speaks for the church' is *per se* a religious matter.... We cannot imagine an area of inquiry less suited to a temporal court." (citation omitted)); *Rayburn*, 772 F.2d at 1169 ("the First Amendment protects the act of a decision rather than the motivation behind it."). To allow Scharon's case to continue would necessarily lead to the kind of inquiry into religious matters that the First Amendment forbids.

It follows that the decision of the District Court based on the "excessive entanglement" test of *Lemon* (an Establishment Clause-type of analysis) must be affirmed. In addition, we believe that the Free Exercise Clause of the First Amendment also prohibits the courts from deciding cases such as this one. Personnel decisions by church-affiliated institutions affecting clergy are *per se* religious matters and cannot be reviewed by civil courts, for to review such decisions would require the courts to determine the meaning of religious doctrine and canonical law and to impose a secular court's view of whether in the context of the particular case religious doctrine and canonical law support the decision the church authorities have made. This is precisely the kind of judicial second-guessing of decision-making by religious organizations that the Free Exercise Clause forbids. *See Serbian Eastern Orthodox Diocese for the United States and Canada v. Milivojevich*, 426 U.S. 696, 713, 96 S.Ct. 2372, 2382, 49 L.Ed.2d 151 (1976); *Minker*, 894 F.2d at 1356–57; *Natal v. Christian and Missionary Alliance*, 878 F.2d 1575, 1576–77 (1st Cir.1989); *Rayburn*, 772 F.2d at 1167–69; *Kaufmann v. Sheehan*, 707 F.2d 355, 358–59 (8th Cir. 1983); *McClure v. Salvation Army*, 460 F.2d 553, 558–61 (5th Cir.), *cert. denied*, 409 U.S. 896, 93 S.Ct. 132, 34 L.Ed.2d 153 (1972).[3]

We affirm the order of the District Court granting defendants' motion for summary judgment.

---

**3.** We are mindful of the potential for abuse our holding theoretically may invite; namely, the use of the First Amendment as a pretextual shield to protect otherwise prohibited employment decisions. But we think that saving grace lies in the recognition that courts consistently have subjected the personnel decisions of various religious organizations to statutory scrutiny where the duties of the employees were not of a religious nature. *See Dole v. Shenandoah Baptist Church*, 899 F.2d 1389 (4th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 131, 112 L.Ed.2d 99 (1990); *E.E.O.C. v. Fremont Christian School*, 781 F.2d 1362 (9th Cir.1986); *Volunteers of Am.–Minn.–Bar None Boys Ranch v. N.L.R.B.*, 752 F.2d 345 (8th Cir.), *cert. denied*, 472 U.S. 1028, 105 S.Ct. 3502, 87 L.Ed.2d 633 (1985); *E.E.O.C. v. Pacific Press Publishing Ass'n*, 676 F.2d 1272 (9th Cir.1982); *E.E.O.C. v. Southwestern Baptist Theological Seminary*, 651 F.2d 277 (5th Cir.1981), *cert. denied*, 456 U.S. 905, 102 S.Ct. 1749, 72 L.Ed.2d 161 (1982); *E.E.O.C. v. Mississippi College*, 626 F.2d 477 (5th Cir.1980), *cert. denied*, 453 U.S. 912, 101 S.Ct. 3143, 69 L.Ed.2d 994 (1981). We have confidence that courts will continue to consider these situations on a case-by-case basis, looking in each case to see whether the plaintiff's employment discrimination claim can be adjudicated without entangling the court in matters of religion.