Ferman SHALIEHSABOU, Plaintiff,

v.

**HEBREW HOME OF GREATER WASHINGTON, INC.,**
Defendant.

No. CIV.A. AW–02–284.

United States District Court,
D. Maryland,
Southern Division.

Feb. 12, 2003.

Stephen Burgess Awalt, PA, Towson, MD, for Plaintiff.

Jeffrey Jules Pargament, Piliero Mazza and Pargament, Washington DC, for Defendant.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

This case arises from Plaintiff Ferman Shaliehsabou's ("Plaintiff") claims against Defendant Hebrew Home of Greater Washington, Inc. ("Hebrew Home") for unpaid wages. Pending before this Court are (1) Plaintiff's Motion for Summary Judgment [22-1]; and Defendant's Cross–Motion for Summary Judgment [23-1]. The Motions and Oppositions to the Motion have been fully briefed and are now ripe for review. The Court has reviewed the pleadings and the applicable law and

has held a hearing on the Motions. *See* D. Md. R. 105(6).

For the reasons stated below, the Court will GRANT Defendant's Cross–Motion for Summary Judgment and will DENY Plaintiff's Motion for Summary Judgment.

## FACTUAL BACKGROUND

This suit arises out of Plaintiff Shaliehsabou's claims that Defendant Hebrew Home allegedly violated Maryland's Wage and Hour Law and the Fair Labor Standards Act ("FLSA") by not paying Plaintiff overtime wages.

Hebrew Home is an elder care facility, providing, *inter alia,* assisted living, senior housing and geriatric medical care to its residents. Though Hebrew Home is open to all members of the public, it predominantly serves members of the Jewish faith. Plaintiff worked for the Vaad Harabanim of Greater Washington, Inc., ("Vaad")[1] and the Hebrew Home as a Mashgiach[2] or kosher supervisor, ensuring compliance with Jewish dietary laws.

Plaintiff's duties involved sacerdotal or priestly functions governed by Jewish law. Plaintiff identified himself as a clergy on his tax returns and a portion of his wages was designated as tax-exempt parsonage allowance. As a kosher supervisor, Plaintiff's functions included supervision of food preparation or "kashruth." During Plaintiff's tenure as a full-time Mashgiach at Hebrew Home, Defendant paid him for at least eighty hours bi-weekly. On August 8, 2001, Plaintiff resigned and on November 2, 2001, he filed his Complaint in the

---

**1.** The Vaad is a non-profit organization of Orthodox Jewish congregational rabbis in the Washington Metropolitan area.

**2.** A Mashgiach is a person who certifies that food is kosher. A Mashgiach ensures that the laws of Kashruth are enforced, and that the community's religious trust is protected.

Kashruth is compliance with Jewish kosher laws. Compliance with the laws of Kashruth depends on the Mashgiach's integrity and expertise. Additionally, a Mashgiach is essential, may be required on the premises at all times, must be present to check all products brought into the establishment and must also be present during the preparation of food.

Circuit Court for Prince George's County, alleging he was entitled to unpaid overtime wages pursuant to FLSA and Maryland law. Defendant subsequently removed the case to this Court.

The Court shall include additional facts in the discussion.

## STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, courts grant summary judgment when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Haavistola v. Community Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 214 (4th Cir.1993). The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded a particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (citation omitted).

Even though the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transportation, Inc.*, 152 F.3d 326, 330–31 (4th Cir.1998); *Runnebaum v. NationsBank of Md., N.A.*, 123 F.3d 156, 164 (4th Cir.1997); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985). Accordingly, the claimant must proffer sufficient proof, in the form of admissible evidence to carry the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316 (4th Cir.1993). In the absence of contradictory evidence showing a genuine dispute as to material fact, the moving party is entitled to judgment as a matter of law.

*See Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. 2548.

For the purposes of summary judgment, a genuine dispute exists if a reasonable jury could return a verdict for the nonmoving party. *See Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505. While the nonmoving party must do more than merely raise some doubt as to the existence of a material fact, the moving party ultimately bears the burden of demonstrating the absence of all genuine issues of material fact. *See Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## DISCUSSION

### Defendant Hebrew Home's Motion for Summary Judgment

Defendant contends that (1) the ministerial exemption applies and Plaintiff is not a covered employee; (2) Assuming the exemption is inapplicable, Plaintiff was an exempt managerial, professional, or administrative employee, or a combination thereof. Defendant maintains further that Plaintiff was paid on a salaried basis consistent with the requirements of wage and hour laws.

### Ministerial Exemption

■ The ministerial exception operates to exempt from the coverage of various employment laws the employment relationships between religious institutions and their ministers. *See Bell v. Presbyterian Church*, 126 F.3d 328, 332–33 (4th Cir.

1997); *Dole v. Shenandoah Baptist Church*, 899 F.2d 1389, 1396–97 (4th Cir. 1990); *Rayburn v. General Conference of Seventh–Day Adventists*, 772 F.2d 1164 (4th Cir.1985), *cert. denied*, 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986); *see also Gellington v. Christian Methodist Episcopal Church*, 203 F.3d 1299 (11th Cir.2000); *Bollard v. California Province of the Soc'y of Jesus*, 196 F.3d 940 (9th Cir.1999); *Combs v. Central Tex. Annual Conference of United Methodist Church*, 173 F.3d 343 (5th Cir.1999); *EEOC v. Catholic Univ. of Am.*, 317 U.S.App. D.C. 343, 83 F.3d 455 (D.C.Cir.1996); *Young v. Northern Ill. Conference of United Methodist Church*, 21 F.3d 184 (7th Cir.1994); *Scharon v. St. Luke's Episcopal Presbyterian Hosps.*, 929 F.2d 360 (8th Cir.1991).

Defendant asserts that because Plaintiff has reported his occupation as clergy on his federal tax returns, designated a portion of his salary as tax exempt parsonage allowance and performed work that was purely religious in nature, the ministerial exemption must apply. The first case in the Fourth Circuit to articulate the ministerial exception to Title VII was *Rayburn v. General Conference of Seventh–Day Adventists*, 772 F.2d 1164 (4th Cir.1985), *cert. denied*, 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986). The Court's analysis in *Rayburn* provides some guidance. In *Rayburn*, the Fourth Circuit explained that the ministerial exemption depended upon the function of the position, not simply the ordination. *See id.* at 1168; *see also EEOC v. Southwestern Baptist Seminary*, 651 F.2d 277 (5th Cir.1981), *cert. denied*, 456 U.S. 905, 102 S.Ct. 1749, 72 L.Ed.2d 161 (1982). In *Rayburn*, the claimant was a woman who held a Master of Divinity degree from the church's theological seminary and who sought appointment to the seven-person pastoral staff of one of the denomination's largest congregations.

Concluding that the claimant, was in fact, a clergy, the Court explained, *Rayburn*, 772 F.2d at 1169: 'As a general rule, if the employee's primary duties consist of teaching, spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship, he or she should be considered clergy.' *Id.* (quoting Bagni, Discrimination in the Name of the Lord: A Critical Evaluation of Discrimination by Religious Organizations. 79 COLUMBIA L. REV. 1514, 1545 (1979)). This is referred to as the "primary duties" test. *See Clapper v. Chesapeake Conf. of Seventh–Day Adventists*, 1998 WL 904528, 166 F.3d 1208 (4th Cir.1998).

Another important case involving the ministerial exception analysis is *EEOC v. Roman Catholic Diocese of Raleigh*, 213 F.3d 795 (4th Cir.2000). Therein, the EEOC brought an enforcement action under Title VII against the Roman Catholic Diocese, alleging that the church discriminated against a claimant on the basis of her sex through a series of adverse employment actions relating to her positions as the Cathedral's Director of Music Ministry and a part-time music teacher at the Cathedral elementary school. *See id.* at 797. The district court dismissed the action as barred by the First Amendment, holding that the ministerial exemption prohibited the application of Title VII to the employment decision in dispute. *See id.* (citing *EEOC v. Roman Catholic Diocese of Raleigh*, 48 F.Supp.2d 505 (E.D.N.C. 1999)). The Fourth Circuit upheld the district court's dismissal, stating that because the claimant's duties consisted of the selection, presentation, and teaching of music, which is integral to the spiritual and pastoral mission of the Catholic Church and many other religious traditions, the ministerial exception was applicable to the case. *See id.;* 213 F.3d at 797.

In reaching the its conclusion, the Fourth Circuit explained that its inquiry focused on " 'the function of the position' at issue and not on the categorical notions of who is or is not a 'minister.' " *Id.* at 801 (quoting *Rayburn,* 772 F.2d at 1171). The Court explained further that it had "expressly rejected any view that ordination is a prerequisite to the application of the exception..., and courts have routinely applied the exception in cases involving persons other than ordained ministers." *Roman Catholic Diocese of Raleigh,* 213 F.3d 795.[3] Additionally, the Court reiterated the general rule that " 'if the employee's primary duties consist of teaching, spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship, he or she should be considered clergy' " *Id.* (quoting *Rayburn,* 772 F.2d at 1169).

A court must focus on the primary duties in determining the application of the ministerial exception. *See Rayburn,* 772 F.2d at 1169 (recognizing that a court must determine whether a position is important to the spiritual and pastoral mission of the church in order to determine whether the ministerial exception applies). The primary duties test necessarily requires a court to determine whether [Plaintiff's] position is important to the spiritual and pastoral mission of the [Hebrew Home]. *See Clapper, supra; see also Corporation of Presiding Bishop of the Church of Jesus Christ of Latter-day Saints v. Amos,* 483 U.S. 327, 337, 107 S.Ct. 2862, 97 L.Ed.2d 273 (1987) (recognizing the importance to the religion's mission of activities run by closely-associated corporations); *EEOC v. Catholic Univ.,* 317 U.S.App. D.C. 343, 83 F.3d 455, 461–63

(D.C.Cir.1996) (citing *Rayburn* in a case applying "ministerial exemption" to a professor of canon law); *Scharon v. St. Luke's Episcopal Presbyterian Hosp.,* 929 F.2d 360, 362–63 (8th Cir.1991) (finding a chaplain in a religiously-affiliated hospital to be a minister); *EEOC v. Southwestern Baptist Theological Seminary,* 651 F.2d 277, 283 (5th Cir.1981) (considering even nonordained Baptist seminary faculty to be ministers).

█ Contrary to the cases sited above, in *Dole v. Shenandoah Baptist Church,* 899 F.2d 1389 (4th Cir.1990), *cert. denied,* 498 U.S. 846, 111 S.Ct. 131, 112 L.Ed.2d 99 (1990), the Fourth Circuit held that the teachers at a Baptist Church operated school were employees covered by FLSA. The Court explained that the teachers were not members of any religious order and performed no sacerdotal functions. In the instant case, Plaintiff served as a Mashgiach, performing sacerdotal functions of the Jewish faith. Plaintiff was employed both by Hebrew Home and the Vaad. As noted above, the Vaad is a non-profit organization of Orthodox Jewish congregational rabbis in the Washington Metropolitan area. The Vaad is the primary rabbi organization in the area entrusted with the supervision and certification of Kashruth and provides other services essential to the Jewish community. The primary purpose of Hebrew Home was to "provide, establish and maintain services, programs and facilities for the care, comfort, and shelter of the infirm and chronologically ill aged of the Jewish faith in accordance with the precepts of Jewish law and customs, including the observance of dietary laws." Compliance with Jewish dietary laws is an

**3.** The Court noted that "[t]hough its range of application is limited to spiritual functions, the ministerial exception ... is robust where it applies." *Id.* at 801. *See e.g., Starkman v.*

*Evans,* 198 F.3d 173 (5th Cir.1999) (lay choir director); *EEOC v. Southwestern Baptist Seminary,* 651 F.2d 277(5th Cir.1981) (faculty of seminary).

integral and essential part of Jewish Kosher religious observance.

In Plaintiff's Motion for Summary Judgment, he argues that the ministerial exemption does not apply and that Defendant's lack of good faith entitles him to liquidated damages. The Court believes that Plaintiff's position is untenable. The *Rayburn* case states that supervision or participation in religious ritual is considered ministerial. *Rayburn*, 772 F.2d at 1169. In the instant case, Plaintiff supervised the kitchen staff and was overseer of preparation of a kosher diet in accordance with orthodox Jewish faith. In *EEOC v. Roman Catholic Diocese of Raleigh*, the Court recognized that "[w]hile the ministerial exception promotes the most cherished principles of religious liberty, its contours are not unlimited and its application in a given case requires a fact-specific inquiry." *Id.* at 801. Based upon the facts of this case, the Court believes that Plaintiff's duties were an integral and necessary part of the Judaism. In fact, because a kosher diet is an integral part of the orthodox Jewish religion, it is safe to conclude that Plaintiff, by acting as Mashgiach, did in fact participate in a religious ritual.

At the hearing on the Motion for Summary Judgment, Plaintiff's attorney argued emphatically that the ministerial exception is not applicable because Plaintiff, though a Mashgiach, was not ordained as a rabbi. Specifically, he argued that Plaintiff "did not have a calling" and "was not serving pursuant to an obligation or ordainment." That argument is misplaced and without merit. The Fourth Circuit has expressly rejected that argument and has stated that ordination is not a prerequisite to the application of the exception. After an extensive review, the Court has found no other cases addressing the ministerial exception on the basis of the instant facts. Nonetheless, it is reasonable to analogize the instant case to those Christianity-based cases discussed supra. Plaintiff's primary duties consisted of supervision of a religious order, or supervision or participation in religious ritual;—enforcing supervision and compliance of the laws of Kashruth or Jewish Kosher laws.

Plaintiff cannot attempt to minimize his duties as a Mashgiach to prevent application of the ministerial exception. It is very inconsistent with the position he takes on his federal tax returns, wherein he asserts a tax-exempt status for his position as a clergy and enjoys a parsonage allowance. Plaintiff will not have his cake and eat it too. As Defendant correctly stated, Plaintiff's duties were not rote or routine, and would not have been hired, but for his expertise in enforcing the laws of Kashruth. Based on the discussion, *supra*, and in light of the precedents shown, it follows that Plaintiff was in fact, serving in a ministerial capacity. Unlike the claimants in *Dole*, Plaintiff in the instant case was performing sacerdotal functions.

Assuming arguendo, that the ministerial application is inapplicable, the Court believes that the executive, professional or administrative exemptions apply, individually or in combination.

**Executive, Professional or Administrative Exemptions**

■ Defendant's other argument is that Plaintiff was an exempt managerial, professional, or administrative employee, or a combination thereof. The Court agrees with Defendant.

29 C.F.R. § 541.1 provides the test for an exempt manager/executive. It provides: (1) the employee's primary duty is management of the enterprise in which the employee is employed or of a reorganized department or subdivision of the enterprise; and (2) the employee regularly directs two or more employees. 29 C.F.R. § 541.2 provides the test for an exempt

administrator. It provides: (1) the employee's primary duty is office or non-manual work directly related to management policies or general business operations of the employer or its customers; and (2) the employee's duties include work requiring the exercise of discretion and independent judgment.

29 C.F.R. § 541.3 provides the test for an exempt professional. It provides: (1) the employee's primary duty is work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized study, not by a generalized academic education or apprenticeship or training in routine processes; and (2) the employee's work requires the consistent exercise of discretion and independent judgment. The record illustrates that Plaintiff had the ability to use his discretion and independent judgment in administration of his duties. He acted as supervisor and had sole responsibility for ensuring that a proper kosher diet was provided as required under orthodox Jewish law.

Plaintiff was in charge of ensuring that the kitchen staff complied with the laws of kashruth and that all equipment were on par with proscribed kosher rules. The record also shows that Plaintiff underwent intensive study and instruction on Jewish law, including Kashruth, at a Yeshiva, followed by four years of higher education at a rabbinical academy. Overall, Plaintiff's duties involved non-manual work that was largely supervisory and required a knowledge and training in kashruth or kosher laws. Accordingly, Plaintiff meets the criteria for an exempt managerial, professional or administrative employee, or a combination of all three.

## CONCLUSION

Based on the above, the Court will **GRANT** Defendant's Cross–Motion for Summary Judgment. In turn, the Court will **DENY** Plaintiff's Motion for Summary Judgment and **CLOSE** this case. An Order consistent with this Opinion will follow.

## ORDER

Pursuant to the bench hearing held on February 3, 2003 and for the reasons stated in the accompanying Memorandum Opinion, dated February 12th, 2003, IT IS this 12th day of February, 2003, in the United States District Court for the District of Maryland, **ORDERED THAT:**

1. Defendant's Cross–Motion for Summary Judgment [23–1] BE, and the same hereby IS, **GRANTED;**

2. Plaintiff's Motion for Summary Judgment [22–1] BE, and the same hereby IS, **DENIED;**

3. The Clerk of the Court **CLOSE** this Case; and

4. The Clerk of the Court transmit copies of this Order and accompanying Memorandum Opinion to all counsel and parties of record.