**Michael Lloyd COMBS, et al**

v.

**CORRECTIONS CORP. OF AMERICA, et al.**

Civil Action No. 95–2029.

United States District Court, W.D. Louisiana, Alexandria Division.

Aug. 22, 1997.

Michael Lloyd Combs, Winnfield, LA, pro se.

Loni Thompson, Winnfield, LA, pro se.

Roy Bond, Winnfield, LA, pro se.

John A. Thompson, Winnfield, LA, pro se.

Arthur L. Keller, Dallas, TX, pro se.

Donald Lancaster, Winnfield, LA, pro se.

Bentley S. Powell, Winnfield, LA, pro se.

James Martin, Winnfield, LA, pro se.

Michael Bass, Winnfield, LA, pro se.

Darren Lee Voshell, Sr., Rosepine, LA, pro se.

Grover Simpson, Winnfield, LA, pro se.

Jonathan S. Becnel, Winnfield, LA, pro se.

Ronald E. Corkern, Jr., Watson Murchison Crews Arthur & Corkern, Natchitoches, LA, for Defendants.

### RULING

LITTLE, Chief Judge.

Plaintiff prisoners charge that prison officials illegally restricted their religious freedoms by limiting their participation in the Native American Religion. The matter was originally assigned to a magistrate for trial, but participant consent was refused. The magistrate conducted an evidentiary hearing at Winn Correctional Center in May 1997 concerning plaintiffs' charges. All plaintiffs were present at the evidentiary hearing and six presented evidence. The defendants also presented evidence. Now before the court are the report and recommendation of the magistrate and objections from plaintiff Arthur Keller.

As fully set forth below, we adopt the magistrate's factual findings and conduct a *de novo* legal review. The legal linchpin of the plaintiffs' contentions and the magistrate's analysis is the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. § 2000bb. The United States Supreme Court recently determined RFRA to be unconstitutional on the basis that its passage exceeded Congress' power. *City of Boerne v. P.F. Flores, Archbishop of San Antonio,* —— U.S. ——, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). We thus must assess the post-RFRA scope of First Amendment protections for prisoners' religious expression. We conclude that the WCC policy applied to the plaintiffs in this case is constitutional in part and unconstitutional in part as a violation of the First Amendment.

### I. *Factual and Procedural Background*

Plaintiffs filed this suit pro se civil rights suit in forma pauperis on 13 November 1995.

Plaintiffs are seven current and former inmates at the Winn Correctional Center ("WCC") near Winnfield, Louisiana. The plaintiffs remaining in the suit are Michael Combs, Loni Thompson, Jonathan Becnel, Donald Lancaster, Grover Simpson, Arthur Keller, and Darren Voshell. The named defendants are Correctional Corporation of America ("CCA"), the corporate operator of WCC, Arthur Hossler, the chaplain at WCC since approximately May of 1995, the Louisiana Department of Corrections, and Richard Stalder, the director of the Louisiana Department of Corrections.

Plaintiffs assert that they were permitted to practice the Native American Religion at WCC from February to October 15, 1995, when their right to participate in religious gatherings was terminated and never restored. Plaintiffs also contend that they have been denied the use of certain items sacred to their religion, including pipes, tobacco, kinnikinik and other sacred herbs, saliva, artemesia, cedar, sweetgrass, small stone bowl burners, sacred feathers, sacred stones, Indian drums and rattles, medicine wheels, and a sweat lodge.

Plaintiffs contend that defendants' restrictions of their religious freedoms violate four separate provisions of federal law and the United States Constitution:

(1) The free exercise clause of the First Amendment, through 42 U.S.C. § 1983;

(2) RFRA, 42 U.S.C. § 2000bb:

(3) The American Indian Religious Freedom Act ("AIRFA"), 42 U.S.C. § 1996; and

(4) The Indian Civil Rights Act, 25 U.S.C. §§ 1301–1303.

Plaintiffs seek to be permitted to worship with their sacred items, to be permitted to worship outside during the daylight hours, and to have the same worship time as other religions, at least two hours per week. Plaintiffs also demand $75,000 in compensatory damages.

### II. *Findings of Fact*

We adopt the factual findings of the magistrate and write further only to summarize. Until early 1995 no prisoner at WCC had

requested permission to practice the Native American Religion. Upon the request of a prisoner, the warden at WCC in February 1995 permitted eleven or twelve prisoners to practice the Native American Religion. Later in 1995, however, the warden feared that "maybe more of a gang or organization was being formed." The warden sought guidance from the Louisiana Department of Corrections and Richard Stalder, the Secretary of the Louisiana Department of Corrections. The Department of Corrections accordingly promulgated guidelines for Native American religious programming. WCC adopted the religious guidelines as its own policy on 15 October 1995. The WCC policy at issue states:

> In order to provide parameters for the development of Native American religious programs, the following guidelines are suggested as a basis for your institutional procedures:
>
> A) The program will only be available to Native American inmates who:
>
> 1) Have a Bureau of Indian Affairs number; or
>
> 2) Are ethnically Native American.
>
> B) Ceremonial feathers will be allowed during Sacred Circle Services only, and will be secured in the Chaplain's office when not in use.
>
> C) For security purposes, headbands will be allowed during Sacred Circle Services only, and will be secured in the Chaplain's office when not in use.
>
> D) A drum may be used during the Sacred Circle Ceremony.
>
> E) A ceremonial pipe and sage, cedar, or sweet grass will be allowed for use during the Sacred Circle Ceremony only. These items will be secured in the Chaplain's office when not in use.
>
> F) One Special Gathering may be authorized annually for one day.

Applying the new policy, the WCC officials determined that plaintiffs would no longer be permitted to practice the Native American Religion at WCC because they could not satisfy rule A. Specifically, plaintiffs could not prove that they had a BIA number or were "ethnically Native American." All of the plaintiffs except Simpson testified that they believed they were of Native American descent. There is no dispute that plaintiffs desired to practice the Native American Religion at WCC but were denied because they could not prove their ethnicity to the satisfaction of the prison officials.

## III. Conclusions of Law

### A. Statutory Claims

Plaintiffs' claims under RFRA, 42 U.S.C. § 2000bb, AIRFA, 42 U.S.C. § 1996, and the Indian Civil Rights Act, 25 U.S.C. §§ 1301–1303, are without merit.

RFRA is no longer enforceable. *City of Boerne,* —— U.S. ——, 117 S.Ct. 2157.

■ AIRFA is a law without teeth. It creates neither a cause of action nor any judicially enforceable individual rights. *Lyng v. Northwest Indian Cemetery Protective Ass'n,* 485 U.S. 439, 455, 108 S.Ct. 1319, 1328, 99 L.Ed.2d 534, 550 (1988).

Plaintiffs also do not state a valid claim under the Indian Civil Rights Act, 25 U.S.C. §§ 1301–1303. That Act requires Native American tribal governments to protect certain Constitutional rights. It does not apply here.

The sole issue in dispute is whether the defendants have violated the First Amendment of the United States Constitution by prohibiting the plaintiffs' free exercise of religion.

### B. First Amendment Free Exercise of Religion

Title 42 § 1983 imposes liability where a person acts "under color" of a state "statute, ordinance, regulation, custom or usage" to deprive another person of rights secured by the United States Constitution. 42 U.S.C. § 1983. The first freedom protected in the Bill of Rights to the Constitution is that of religious liberty. "Congress shall make no law ... prohibiting the free exercise [of religion]." U.S. Const. amend. I. Indentifying the parameters of the First Amendment has proven to be almost as difficult as defining "religion" or "God."

### 1. *Supreme Court Free Exercise Jurisprudence*

The United States Supreme Court in 1963 crafted a general test to determine claims of infringement upon religious liberty. This test, known as the "compelling governmental interest" test, states that a regulatory burden upon a person's right freely to practice his religion may be justified only by a compelling state interest in the regulation of a subject within the government's power to regulate. *See Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972).

In 1990, however, the Court in a 54 decision abolished the compelling governmental interest test in free exercise cases where a law is neutral and of general applicability. *Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). In that case, the Court found that a compelling governmental interest was not required for neutral and generally applicable laws, even if the laws had an incidental effect of burdening a religious practice. *Smith*, 494 U.S. at 886, 110 S.Ct. at 1604.

The Supreme Court's Smith decision has been criticized by scholars, courts, Congress, and the President as an unwarranted weakening of a constitutional cornerstone.[1] Congress passed RFRA in direct response to Smith. RFRA directed that a compelling governmental interest had to be demonstrated before the government could substantially burden a person's free exercise of religion. The Supreme Court in *City of Boerne* held that RFRA was unconstitutional as an abuse of the federal balance of power. Upon the removal of RFRA, we consider Smith as the guiding light for a free exercise analysis. The compelling governmental interest test is no longer applicable.

### 2. *Free Exercise of Religion for Prisoners*

■ The rule is well established that prison inmates retain their First Amendment right to exercise their religious beliefs. Restrictions on prisoner religious exercise are constitutionally permitted, but "must be reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir.1996).[2]

### 3. *WCC Policy*

■ In this case, we hold that the defendants have not demonstrated a reasonable relation to a legitimate penological interest in restricting the practice of the Native American Religion only to those prisoners of Native American ancestry. The WCC policy offends the fundamental constitutional right to practice religion of one's choice. The policy is akin to a requirement that practicing Catholics prove an Italian ancestry, or that Muslims trace their roots to Mohammed. Under the Constitution, the freedom to believe, or not to believe, in a religious faith is reserved not to a select class of citizens, but to all. The defendants are enjoined from restricting the practice of the Native American Religion to those who can demonstrate a BIA number or Native American ancestry.

*Bear v. Nix*, 977 F.2d 1291 (8th Cir.1992), is factually and legally distinct. In that case, a Native American spiritual leader was hired as an independent religious consultant and coordinator in an Iowa prison pursuant to a

---

1. *See City of Boerne*, —— U.S. at ——–——, 117 S.Ct. at 2176–85 (O'Connor, J., and Breyer, J., dissenting); —— U.S. at ——–——, 117 S.Ct. at 2185–86 (Souter, J., dissenting) *see also* Stephen L. Carter, *The Culture of Disbelief* (1993). Justices O'Connor, Breyer, and Souter in their *City of Boerne* dissents conclude that *Smith* is supported neither by precedent nor by history and was wrongly decided. They suggest a return to the compelling governmental interest standard. In that *Smith* reduces the First Amendment to a paper tiger and repudiates a long history of carefully crafted free exercise jurisprudence, we agree with the dissenters.

2. The Supreme Court standard from *O'Lone* was thrown into doubt by the passage of RFRA. *See Diaz v. Collins*, 872 F.Supp. 353, 358 (E.D.Tex. 1994). Some courts held that RFRA overruled *O'Lone*. *See Brown–El v. Harris*, 26 F.3d 68, 69 (8th Cir.1994). We note both that RFRA has now been overruled and that the Fifth Circuit continued to use the *O'Lone* standard in prisoner free exercise cases after the passage of RFRA. We conclude that the standard stated in *O'Lone* and *Eason* for free exercise prison cases is controlling.

court-ordered consent decree. When the spiritual leader did not permit certain prisoners to participate in Native American rituals because they were not Native Americans, the prisoners again sued the prison. The Eighth Circuit upheld the actions of the prison, finding that the prison did not violate the First Amendment. The court reasoned that the prison was trying to comply with the consent decree by hiring the religious coordinator. 977 F.2d at 1294 n. 7. Also, the coordinator was not acting on behalf of the prison when he excluded the prisoners. *Id.*

In the instant case, the prison officials, not tribal officials, have created the exclusionary religious policy. A critical penological factor in Bear—the consent decree—also is not present at WCC. In sum, the ethnicity test prescribed by WCC for religious practice does not pass constitutional muster.

■ The free exercise clause of the First Amendment embraces two concepts: the freedom to believe and the freedom to act. "The first is absolute but, in the nature of things, the second cannot be." *United States v. Ballard,* 322 U.S. 78, 86, 64 S.Ct. 882, 886, 88 L.Ed. 1148, 1154 (1944). We have found that part A of the WCC policy violates the First Amendment because it effectively limits the freedom to believe. Defendants state that the penological interest for the Native American religion policy as WCC is to prevent a prison gang. There are other methods to achieve the same result without abusing the First Amendment.

If, for example, the prison demonstrated that there was a legitimate penological interest in not allowing more than fifty inmates to gather in one setting, it might create a guideline limiting religious gatherings to a size of fifty persons. This might incidentally affect the religious practice of certain prisoners. A religion might demand communal worship in a group exceeding fifty disciples. Nevertheless, the policy would be upheld if it were reasonably related to a legitimate penological interest.

■ The policy implemented by WCC also included various restrictions on prisoner access to sacred items between ceremonies. The items are to be secured in the chaplain's office when not in use. There are sound penological reasons for restricting access to items such as drums when not in use. We find the access restrictions to be provisionally acceptable, but incomplete. For example, the policy does not state how often Sacred Circle Ceremonies will be allowed. It is ordered that plaintiffs be allowed to practice the Native American Religion at the same frequency as before the WCC policy was implemented in October 1995. The policy also does not refer to many of the sacred items listed by the plaintiffs in their suit. It is accordingly ordered that the plaintiffs be allowed to use sacred items in their worship not described in the WCC policy when the sacred items can be used without breaching prison security. The magistrate concluded that a restriction on the construction of a sweat lodge was reasonably related to a legitimate penological concern. We agree. We will leave other case-by-case decisions to the discretion of the prison officials.

We emphasize two points to the prison officials. First, any prison policies impacting the free exercise of religion must be reasonably related to a legitimate penological interest. Second, the officials must strive to implement any policies restricting religions neutrally. That is to say, if members of one religion are permitted two hours of group worship per week, members of other religions should be provided the same "freedom."

### C. *Damages*

There is no evidence presented that plaintiffs suffered any actual injuries. The request for monetary damages is DENIED.

### IV. *Conclusion*

For the reasons set forth above, the plaintiffs' request for injunctive relief is GRANTED in part and DENIED in part. The request for monetary relief is DENIED.