Thomas F. MITCHELL, Jr. Plaintiff,

v.

Ronald ANGELONE, et al. Defendants.

No. CIV.A. 3:97CV492.

United States District Court,
E.D. Virginia,
Richmond Division.

Nov. 18, 1999.

Thomas F. Mitchell, Jr., Haynesville, VA, for Thomas F. Mitchell, Jr., plaintiff.

Pamela Anne Sargent, Office of the Attorney General of Virginia, Richmond, VA, for Ronald J. Angelone, Director, Virginia Department of Corrections, David A. Garraghty, Chief Warden, Virginia Department of Corrections, M.C. Millard, Associate Warden, Virginia Department of Corrections, Sergeant D. Walker, Officer, Virginia Department of Corrections, defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

RICHARD L. WILLIAMS, District Judge.

Thomas F. Mitchell, Jr., a Virginia state prisoner proceeding *pro se*, brings this suit pursuant to 42 U.S.C. § 1983. Mitchell alleges his constitutional rights were violated by the Defendants' policy prohibiting his procurement of Native American spiritual items.

The Defendants filed a motion for summary judgment on May 20, 1999. The motion fails to comply with Rule 56(b) of the Local Rules for the United States District Court for the Eastern District of Virginia. Accordingly, the Defendants' motion for summary judgment will be denied.

The matter was referred to the United States Magistrate Judge for an evidentiary hearing pursuant to 28 U.S.C. § 636(b). The evidentiary hearing was held on June 17, 1999. The Magistrate Judge entered a Report and Recommendation on June 23, 1999.

■■■■ "The magistrate makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court." *Estrada v. Witkowski*, 816 F.Supp. 408, 410 (D.S.C. 1993) (citing *Mathews v. Weber*, 423 U.S. 261, 270–71, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976)). This court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). "The filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). "Frivolous, conclusive or general objections need not be considered by the district court." *See Nettles v. Wainwright*, 677 F.2d 404, 409 n. 8 (5th Cir.1982); *Johnson v. United States*, 906 F.Supp. 1100, 1102 (S.D.W.Va. 1995).

The Court has reviewed the transcript of the evidentiary hearing, and the parties' objections thereto. As set forth below, the Court sustains in part and overrules in part of parties' objections. The Report and Recommendation of the United States Magistrate Judge, as modified, is accepted and adopted.

### I. Objections

Because of difficulties obtaining a transcript of the evidentiary hearing, Mitchell was granted an extension of time until October 13, 1999, to file his objections.

Mitchell's objections, executed on October 16, 1999 are untimely. Moreover,

Mitchell's sole object that the transcription of the record was inadequate to file objections to the conclusions of the Magistrate Judge lacks merit. While the transcription of the taped evidentiary hearing contains certain omissions, such omissions are not of such a degree as to prevent Mitchell from filing objections. Moreover, in reaching its findings of facts and conclusions of law, the Court has reviewed the tape recording of Mitchell's evidence at the evidentiary hearing. This review satisfies the Court that the lack of any objections by Mitchell is attributable to Mitchell's failure to introduce any persuasive evidence in support of his First Amendment claim, rather than any defect in the transcription.

The Defendants objected to the Magistrate Judge's Finding of Fact Number 4, that inmates who prove their Native American heritage are automatically entitled to an exemption from the restrictions on personal property. The Court sustains this objection in part, and has so modified its findings of fact. *See* Findings of Fact ¶ 8.

The Defendants direct the remainder of their objections to the Magistrate Judge's recommendation that injunctive relief is warranted on Mitchell's equal protection claim. These objections are overruled. The action is not moot. *See* Findings of Fact ¶ 1; Conclusions of Law ¶ 1. Race is not an accurate litmus test for whether an inmate sincerely believes in Native American religious beliefs. *See* Findings of Fact ¶ 14; Conclusion of Law ¶ 12. The neutrality of Department of Corrections Operating Procedure 856 is irrelevant to Mitchell's equal protection claim. *See* Findings of Fact ¶ 5. Defendants' exemption policy is not reasonably related to legitimate security concerns. *See* Conclusions of Law ¶¶ 10, 11, 12, 13, 14.

Upon review of the record, including the transcript and the tape of the June 17, 1999 evidentiary hearing, the Report and Recommendation and the objections thereto, the Court makes the following Findings of Fact and Conclusions of Law.

## II. Findings of Fact

1. Mitchell is an inmate currently in the custody of the Virginia Department of Corrections ("VDOC"). Mitchell's claims arise out of his incarceration at the Greensville Correctional Center ("GCC"), in 1997 and 1998. GCC houses a significant portion of the total inmates within the VDOC. *See Virginia Department of Corrections: Average Daily Populations for 1998–Major Institutions* (visited on October 27, 1999), <http://www.cns.state.va.us/doc/Planning/PSR2.htm>. In January of 1995, Mitchell was transferred to GCC. (June 17, 1999 Hearing Transcript "Hr. T." at 26.) In June of 1998, Mitchell was transferred to Deerfield Correctional Center. Subsequently, in August 1999, Mitchell was transferred to Haynesville Correctional Center. *See* Clerk's Record.

2. Defendant Ronald Angelone is the Director of VDOC (Hr. T. at 30.), and defendant David Garraghty is the Warden of GCC. *Id.* at 58. Defendant Marie Millard is an employee of the VDOC at GCC. *Id.* at 73.

3. Mitchell is a member of the group H.E.A.R.T. (Heritage Examined Around Redman Traditions) which practices some Native American rituals. *Id.* at 26.

4. HEART is not a religion nor a church. *Id.* 26–28.

5. Within the VDOC, the possession of personal property by inmates is generally subject to restrictions set forth in Department Operating Procedure ("DOP" 856). (Hr. T. at 33.) However, the administrator(s) of each facility may grant inmates exemptions for religious personal property *which is not specifically authorized by DOP 856*, on a case-by-case basis, provided the item does not compromise institutional security. *Id.;* DOP 856, Attachment 3A, at page 5.

6. In 1996, Mitchell requested approval for the purchase of herbs and an abalone shell. (Hr. T. at 26.) Initially, he received no response. After two subsequent requests, Millard told Mitchell that he would

not be able to obtain these items until he could prove he was a Native American. *Id.* at 27.

7. In May of 1997, Millard and Garraghty advised all members of the HEART organization that they could not obtain additional nonconforming property items associated with Native American rituals, such as herbs and abalone shells, without proof that the inmate was actually a Native American. (Hr.T. at 80–83).

8. A Native American inmate who submits proof of his Native American heritage may receive an exemption from property restrictions for items necessary to practice his faith, provided the warden concludes that the items are safe for that institution. (Hr. T. at 27, 64, 79).

9. Regardless of the sincerity of an inmate's faith in Native American spiritual practices, a Non–Native American inmate is precluded from receiving such an exemption. (Hr. T. at 60–65.)

10. Although Millard and Garraghty prohibit Non–Native American inmates from obtaining nonconforming religious items, the defendants allow Non–Native American inmates, who profess to believe in Native American religions, to congregate and practice their professed beliefs. *Id.* at 68, 79.

11. Each of the following items represents a security risk:

a. Herbs and grasses, which yield a pungent odor when burning, easily masking all other smells, and which yield false positives in field tests for the presence of marijuana. *Id.* at 76,

b. Abalone shells, which can be used as a clubbing weapon or a broken into a sharp cutting instrument. *Id.* at 76–77.

12. Possession of herbs creates particular problems in identification and could consume valuable prison resources to make proper identification. *Id.* at 49, 53.

13. Herbs and abalone shells pose additional security risks because they could be stolen by other inmates and misused.

14. The defendants failed to present any convincing evidence that race is a pre-requisite for a sincere belief in Native American theology. (Hr. T. 41–43, 83–101.)

## III. Discussion

In his opening statement Mitchell asserted that his religion "is based upon the Native American spiritual practice." (Hr. T. at 7). However, Mitchell failed to produce any evidence concerning the basic tenets of his religion or of HEART. Mitchell failed to state why he needs any of the required items for any reason. On the other hand, the Defendants have set forth valid reasons why no person should be permitted to acquire or possess the herbs and abalone shell Mitchell requested. Defendant Angelone testified that, in his opinion, no inmate should have access to such items, regardless of faith, creed or race because of the grave danger the items present to prison security.

Surprisingly, the Defendants have created an exception based entirely on race, i.e., Native Americans may acquire these admittedly dangerous items by providing a Bureau of Indian Affairs card and the reasons why they need the items to practice their sincerely held religion. The Defendants refuse to entertain requests for these items by inmates of any other race. As a Non–Native American, Mitchell is prohibited from ever obtaining herbs and abalone shells, regardless of the sincerity of his beliefs. The initial dispositive factor in allowing the inmate to acquire herbs and abalone shells is whether or not the inmate is a member of the Native American race. A white inmate or black inmate may not, under any circumstances, regardless of the sincerity of his beliefs, obtain these items.

The defendants' assert that: (1) a sincere belief in Native American theology is limited to Native Americans; belief in that Native American inmates are offended by white inmates who profess a sincere belief in the theology that animates Native American religious ritual. Such assertions are supported by stereotyping and supposition rather than any credible evidence.

**490**

### IV. Conclusions of Law

1. Generally, an inmate's transfer to another institution moots that inmate's claim for declaratory judgment or injunctive relief. *See, e.g., Williams v. Griffin,* 952 F.2d 820, 823 (4th Cir.1991)(holding that prisoner's transfer to another facility mooted his claims for declaratory and injunctive relief). This case falls within the exception to the mootness rule which permits judicial review when the dispute is "capable of repetition, yet evading review." *Southern Pac. Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911). "This exception applies if (1) the challenged action is too short in duration to be fully litigated and (2) there is a reasonable expectation that the same party will be subjected to the same action again." *In Re Baltimore Sun v. Goetz,* 886 F.2d 60, 63 (4th Cir.1989)(citing *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975)). In light of the frequency with which the VDOC has transferred Mitchell, and the size of GCC, the Court concludes there is a reasonable expectation that Mitchell will again be transferred to GCC, where he once again will be subject to the race-based exemption policy and his stay at GCC is unlikely to be of sufficient duration to exhaust his administrative remedies, *see* 42 U.S.C. § 1997e(a), and fully litigate the matter. *See Withers v. Levine,* 615 F.2d 158, 160–61 (4th Cir.1980)(concluding likelihood of eventual retransfer to offending institution supported finding that dispute was capable of repetition yet evading review); Findings of Fact ¶ 1.

2. To merit protection under the Free Exercise Clause of the First Amendment, the plaintiff's proffered belief must be sincerely held and the claim must be rooted in religious belief. *Wisconsin v. Yoder,* 406 U.S. 205, 215–16, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Thomas v. Review Brd. of Indiana Empl. Sec. Div.,* 450 U.S. 707, 713–14, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981).

3. To determine whether Native American spirituality is a religion protected by the free exercise clause of the First Amendment, courts must assess whether it "occupies a place in the lives of its members 'parallel to that filled by the orthodox belief in God in religions more widely accepted in the United States.'" *Dettmer v. Landon,* 799 F.2d 929, 931 (4th Cir.1986)(quoting *United States v. Seeger,* 380 U.S. 163, 166, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965)), *cert. denied,* 483 U.S. 1037, 108 S.Ct. 6, 97 L.Ed.2d 796 (1987). In evaluating whether a belief is religious in nature, the courts "must take care 'avoid any predisposition toward conventional religions so that unfamiliar faiths are not branded mere secular beliefs.'" *Doswell v. Smith,* No. 94–6780, 139 F.3d 888, 1998 WL 110161, at * 3 (4th Cir. March 13, 1998)(quoting *Africa v. Com. of Pa.,* 662 F.2d 1025, 1031 (3d Cir.1981)).

4. The plaintiff also must demonstrate that his religious freedom has been substantially burdened by the actions of Defendants. *See Woods v. Evatt,* 876 F.Supp. 756, 772 (D.S.C.1995) *aff'd mem.,* 68 F.3d 463, 1995 WL 612968 (4th Cir. 1995).

5. Mitchell has utterly failed to carry his burden of proving a violation of the First Amendment. There is no evidence of what Mitchell's beliefs are, much less any evidence that these beliefs are "'parallel to that filled by the orthodox belief in God' in religions more widely accepted in the United States." *See Dettmer v. Landon,* 799 F.2d 929, 931 (4th Cir.1986)(quoting *United States v. Seeger,* 380 U.S. 163, 166, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965)). Furthermore, there is no evidence establishing the tenets of Mitchell's religion, or that Mitchell sincerely believes these tenets, or that any of the requested items are necessary to perform a ceremony basic to his religious beliefs. Finally, Mitchell presented no evidence that the current policy of the VDOC has prevented him from practicing his religion as he understands it. *See Goodall v. Stafford County School Bd.,* 60 F.3d 168, 173 (4th Cir.1995).

6. Even if Mitchell had established a prima facie case, the Defendants have demonstrated that the prohibition of these items is related to the legitimate penological interests of prison safety and security. *See Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); Findings of Fact ¶¶ 11, 12, 13. Accordingly, Mitchell's First Amendment claim is DISMISSED.

7. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. To succeed on an equal protection claim the plaintiff must first show that (i) he was treated differently than others; (ii) who were similarly situated and; (iii) that such unequal treatment was the result of intentional or purposeful discrimination. *McGlothlin v. Murray*, 993 F.Supp. 389, 406–07 (W.D.Va.1997).

8. Mitchell, who is white, is similarly situated to Native American inmates who profess to practice a Native American religion and who approach the Defendants seeking an exemption from the general property restrictions for non-conforming Native American religious items. *Cf. Combs v. Corrections Corp. of America*, 977 F.Supp. 799, 802–3 (W.D.La.1997)(enjoining defendants from restricting practice of Native American religion to Native Americans). Garraghty and Millard evaluate and process requests by Native American inmates for exemptions for obtaining traditional Native American spiritual items on a case by case basis. *See* Findings of Fact ¶ 8. Garraghty and Millard refuse to process requests for exemptions for such items by members of any other race. *See* Findings of Fact ¶¶ 6, 7. Millard requested an exemption. *Id.* Garraghty and Millard refused to process Mitchell's request because he was white. *Id.* at ¶¶ 6, 7. Thus, Mitchell has satisfied the first step in demonstrating an equal protection violation.

9. Once a litigant demonstrates that he has been the subject of intentional discrimination, the Court then must determine whether the disparity in treatment is justified. *McGlothlin*, 993 F.Supp. at 406. The injustice of judging human beings by the color of their skin is so apparent that "government institutions that choose to employ racial classifications face 'the presumption that such a choice cannot be sustained.'" *Eisenberg ex rel. Eisenberg v. Montgomery County Public Shools*, 197 F.3d 123, 128 (4th Cir.1999)(quoting *Podberesky v. Kirwan*, 38 F.3d 147, 152 (4th Cir.1994)). However, in the prison context, a regulation that employs a racial classification will be sustained so long as the regulation is reasonably related to legitimate penological interests. *See Washington v. Harper*, 494 U.S. 210, 223, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990)(citing *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)); *Altizer v. Deeds*, 191 F.3d 540, 548 n. 13 (4th Cir. 1999).

10. The test used to determine whether a regulation is permissible assesses four factors: (1) whether the regulation is logically connected to the legitimate penological interests invoked to justify it; (2) whether an alternative means of exercising the right on which the regulation impinges remains open to prison inmates; (3) the impact that accommodation of the asserted rights will have on prison staff, other inmates, and the allocation of prison resources; and (4) the absence of ready alternatives that fully accommodate the prisoner's rights at de minimis cost to valid penological interests. *Turner*, 482 U.S. at 89–90, 107 S.Ct. 2254.

11. The Defendants have asserted that the policy of preventing Mitchell from obtaining Native American spiritual items stems from safety and security concerns. No evidence was offered as to why these items are any less dangerous when obtained by Native Americans than when obtained by inmates of any other race.[1]

---

1. Indeed Defendants' own evidence established that these items are dangerous even

*See* Findings of Fact ¶¶ 10, 11, 12, 13.

12. The Defendants also suggest that race is the only way to limit possession of these admittedly dangerous items to inmates who sincerely believe in a particular Native American religion. The Defendants' equivocal evidence that some tribes would not welcome Non–Native Americans at some ceremonies does not address whether Non–Native Americans have a sincere faith in the creeds and beliefs that animate these ceremonies. "[B]eliefs holding the same important position for members of one of the new religions as the traditional faith holds for more orthodox believers are entitled to the same treatment as the traditional beliefs." *Africa v. Commonwealth of Pennsylvania,* 662 F.2d 1025, 1032 n. 12 (quoting *Malnak v. Yogi,* 592 F.2d 197, 207 (3d Cir.1979)(Adams, J., concurring)). Defendants' refusal to acknowledge that sincere belief in Native American theology is not absolutely limited to individuals with a certain percentage of Native American blood defies common sense and precedent. *See Thomas v. Review Brd. of Indiana Empl. Sec. Div.,* 450 U.S. 707, 715–16, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981)(observing that "the guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect"; *Combs v. Corrections Corp. of America,* 977 F.Supp. 799, 802–03 W.D. La.1997).

13. Lastly, the Defendants assert that their exemption promotes security by appeasing Native American inmates who are offended by Non–Native American inmates who pretend to practice the Native American faith. *See* Defs.' Obj. at ¶ 25. At best, the evidence indicates that a "couple" of Native American inmates were perturbed, **at prison officials,** for forcing them to share their chapel time with a group of white inmates who claimed to be American Indians. (Hr. T. at 54–55.) When this group of white inmates subsequently robbed and strong-armed other inmates,

the correctional officials indiscriminately began investigating and "locking up" the white and Native American inmates who had been forced to share chapel time. *Id.* The Native American inmates were offended that institutional officials forced them to share chapel time with the whites and then used that forced association as indicia of guilt. The evidence simply fails to demonstrate that Native American inmates were offended by white inmates who professed to practice Native American religions. To the extent the umbrage of a few Native American inmates constituted a valid security concern, the defendants' fail to suggest why it could not be addressed simply by scheduling separate chapel times for Native Americans and Non–Native Americans who professed to share the same beliefs. *See Turner v. Safley,* 482 U.S. 78, 98, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)("the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns").

14. The defendants' accommodation of Native American requests for religious items indicates that allowing Non–Native American inmates the same opportunity to prove the sincerity of their beliefs and thereby receive an exemption from the general property restrictions for these same spiritual items would not have a "significant 'ripple effect'" on prison resources. *Turner v. Safley,* 482 U.S. 78, 91, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

15. "[A] regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." *Turner v. Safley,* 482 U.S. 78, 89–90, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). The defendants' race-based exemption policy is not reasonably related to legitimate safety and security concerns, even giving deference to prison officials.

when possessed by a Native American with sincere beliefs: such items can be stolen by other inmates and misused.

*Combs v. Corrections Corp. of America,* 977 F.Supp. 799, 802–03 (W.D.La.1997).

16. "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C.A. § 3626(a)(1)(A). The Defendants are enjoined from refusing Mitchell a religious exemption from the existing property restrictions, available to other inmates, **solely** on the basis of his lack of membership in the Native American race. This limited injunction is "narrowly drawn, extends no further than necessary to correct the violation" of Mitchell's rights under the Equal Protection Clause, "and is the least intrusive means necessary to correct the violation of that right." 18 U.S.C.A. § 3626(a)(1)(A).

An appropriate Order shall issue.