NO. 12-01-00052-CV



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


LAWRENCE EDWARD THOMPSON,
§
 APPEAL FROM THE 349TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


CHERYL J. STANSBERRY, CHARLES

WILLIAMSON, AND GARY JOHNSON,

APPELLEES
§
 HOUSTON COUNTY, TEXAS

 

 Lawrence Edward Thompson (Appellant), an inmate confined in the Texas Department of
Criminal Justice - Institutional Division (TDCJ-ID), filed suit complaining of cross-gender strip
searches. He appeals from the trial court's order granting a motion for summary judgment filed by
Cheryl Stansberry, Charles Williamson, and Gary Johnson (collectively Appellees) and dismissing
Appellant's cause of action with prejudice. In two issues, Appellant asserts the trial court erred in
granting the motion for summary judgment and erred in granting Appellees more relief than
requested. We modify the trial court's judgment to delete unnecessary language and affirm as
modified.

 Appellant is a male prisoner at the Eastham Unit of TDCJ-ID. Cheryl Stansberry is a
correctional officer at the Eastham Unit, Charles Williamson is former assistant warden of the
Eastham Unit, and Gary Johnson is former Director of TDCJ-ID. Appellant adheres to the teachings
of the Islamic faith. One of the tenets of his faith is that he should not be seen nude by females other
than his wife. During his incarceration, Appellant was required to submit to strip searches performed
by Stansberry, as well as other female correctional officers, and then required to walk down a hall
to the shower while in view of female officers. Appellant made it clear to correctional officers that
he was uncomfortable with these practices and eventually filed suit pursuant to 42 U.S.C. § 1983 and
the Texas Tort Claims Act. See 42 U.S.C. § 1983 (1996); Tex. Civ. Prac. & Rem. Code Ann. §§
101.001 - 101.109 (Vernon 1997 & Supp. 2002). He argued that, as a Muslim, the prison system's
policy allowing cross-gender strip searches violates his right to religious freedom under the First
Amendment to the United States Constitution. He also asserted a claim under the Texas Tort Claims
Act for negligent implementation of policy. 

 Appellant's petitions caused some confusion as to who was sued and in what capacity. 
However, a pro se inmate's petition is to be liberally construed. Spellmon v. Sweeney, 819 S.W.2d
206, 209 (Tex. App.-Waco 1991, no writ). With that directive in mind, we consider the state of the
record. In the style of his original petition, Appellant named Stansberry and Williamson, in their
individual capacity, and TDCJ-ID. He did not name TDCJ-ID in the body of his petition. In his first
amended petition, Appellant named nine additional defendants, apparently all correctional officers
at the Eastham Unit. In his second amended petition, Appellant named two of those nine defendants
as if they were being named for the first time, and catalogued new allegations against those
defendants and against TDCJ-ID based on the actions of those defendants. 

 The record does not show that TDCJ-ID or any individual defendants other than Stansberry
and Williamson were ever served. Jurisdiction of the person of a defendant is acquired by service
of process, by his voluntary appearance, or by his waiver of service. Stanley v. Columbus State
Bank, 258 S.W.2d 840, 843 (Tex. Civ. App.-Fort Worth 1953, writ ref'd n.r.e.). Accordingly,
judgment shall not be rendered against one who was not served and did not waive service or appear. 
Tex. R. Civ. P. 124. Appellant filed his Second Amended Petition, his live pleading, on March 1,
2000. Appellees, Stansberry, Williamson, and Johnson, thereafter filed an Original Answer, an
amended answer and jury demand, a motion for summary judgment, and an amended motion for
summary judgment. Appellees therefore appeared before the trial court for all purposes. Appellant
claims he did not sue Johnson, individually or in his official capacity. However, as Johnson
appeared, he voluntarily subjected himself to the jurisdiction of the court. Tex. R. Civ. P. 124;
Werner v. Colwell, 909 S.W.2d 866, 870 (Tex. 1995). The trial court's judgment does not purport
to dispose of TDCJ-ID or any defendants other than Stansberry, Williamson, and Johnson. 
Accordingly, the defendants before the trial court, and Appellees in this court, are Stansberry,
Williamson, and Johnson, in their individual capacity.

 Appellees filed a motion for summary judgment asserting entitlement to judgment as a matter
of law on five separate grounds. In support of their motion, Appellees presented a memorandum and
order entered in the case of Aranda v. Lynaugh, No. H-89-277, United States District Court for the
Southern District of Texas, signed July 23, 1993, the affidavit of Jimmy Alford, past warden of the
Eastham Unit, and a copy of the Texas Department of Criminal Justice's Administrative Directive
number AD-03.22 (rev. 6).

 On January 17, 2001, Appellant attempted to file a response to Appellees' motion for
summary judgment. However, the hearing on the motion was the following day and the record does
not reflect that the trial court gave Appellant permission to file his response late. After the January
18 hearing, the trial court entered an order granting Appellees' motion for summary judgment,
dismissing Appellant's cause of action with prejudice, and denying Appellant any and all relief
sought. The order also includes the following declaration: "This is a final judgment and disposes
of all issues and parties in this case. All relief not specifically granted by this order is DENIED." 
The order does not state which ground urged by Appellees was relied upon by the trial court.

 In his first issue, addressing each of the five grounds relied upon by Appellees in their motion
for summary judgment, Appellant asserts the trial court erred in granting that motion. Among other
arguments, Appellant contends that there is a material fact issue regarding whether the cross-gender
searches constitute a violation of his First Amendment rights. He further contends that the trial court
cannot rely on the ground that individuals cannot be held liable under the Tort Claims Act because
he did not sue individuals under that Act, only TDCJ-ID. He also asserts that the Appellees, in their
motion for summary judgment, based their argument against his retaliation claim on a
misinterpretation of his petition and, therefore, the motion did not address his retaliation claim. 

 To obtain a summary judgment, the movant has the burden of showing that there is no
genuine issue of material fact and that he is entitled to judgment as a matter of law. Tex. R. Civ. P.
166a(c). In deciding whether there is a disputed material fact issue precluding summary judgment,
evidence favorable to the non-movant will be taken as true. Nixon v. Mr. Property Management
Co., 690 S.W.2d 546, 548-49 (Tex. 1985). Every reasonable inference must be indulged in favor
of the non-movant and any doubts resolved in its favor. Id. Summary judgment for a defendant is
proper when the summary judgment evidence negates an essential element of the plaintiff's cause
of action as a matter of law or conclusively establishes all elements of an affirmative defense as a
matter of law. See Black v. Victoria Lloyds Ins. Co., 797 S.W.2d 20, 27 (Tex. 1990). Once the
defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts
to the non-movant to produce controverting evidence raising issues of fact. Torres v. Western Cas.
& Sur. Co., 457 S.W.2d 50, 52 (Tex. 1970); Owen Elec. Supply, Inc. v. Brite Day Constr. Inc., 821
S.W.2d 283, 286 (Tex. App.-Houston [1st Dist.] 1991, writ denied). When the order granting
summary judgment does not specify the particular grounds the trial court sustained, on appeal, the
summary judgment opponent must defeat each summary judgment ground argued by the movant. 
Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989). Otherwise, an appellate court must uphold the
summary judgment on any ground that is supported by the evidence and pleadings. Id.

 The second ground argued by Appellees in their motion is the assertion that Appellant did
not demonstrate a violation of the First Amendment. Appellees assert that, even assuming some
incidental effect of the strip search policy on the free exercise of Appellant's religion, that effect does
not amount to a violation of his constitutional rights. Identifying security as the pertinent legitimate
penological interest at issue, they contend that the strip search policy is not based on religion and is
applicable to inmates of all religions. 

 In support of their motion, Appellees filed the affidavit of Jimmy Alford, who was warden
of Eastham Unit at the time of the complained-of strip searches. He explained that he required
female officers to perform strip searches on male inmates pursuant to Administrative Directive 03.22
(rev. 6) because of the large number of strip searches needed and because of limited availability of
staff. The searches were required for security reasons as possession of contraband by inmates was
a serious problem. Contraband was transported in their clothes and body cavities. He stated that
inmates of all religions were subjected to strip searches. 

 Appellees also presented a copy of Administrative Directive 03.22 (rev. 6) in support of their
motion. This document was promulgated by the Texas Department of Criminal Justice on December
2, 1997, is signed by Appellee Johnson, and outlines procedures for searching prisoners. It explains
that inmates must be searched because the presence of contraband presents a security risk. Strip
searches in particular are at times necessary to ensure safety of both inmates and staff and to reduce
the presence of contraband. Strip searches are to be done only when directed by specific orders or
policy or when a supervisor believes there is reasonable cause to warrant it. When possible, the
directive states, strip searches should be done by officers of the same gender as the inmate. Opposite
gender searches are authorized only in extraordinary circumstances and when approved by the
warden.

 Section 1983 imposes liability where a person acts under color of a state statute, ordinance,
regulation, custom or usage to deprive another person of rights secured by the United States
Constitution. 42 U.S.C. § 1983. The First Amendment of the United States Constitution protects
the free exercise of religion. U.S. Const. amend. I. However, a prisoner's rights are diminished by
the needs and exigencies of the institution in which he is incarcerated. Moore v. Carwell, 168 F.3d
234, 236 (5th Cir. 1999). Thus, while inmates retain their First Amendment right to exercise their
religious beliefs, restrictions on that right are constitutionally permitted if reasonably related to
legitimate penological interests. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349, 107 S. Ct. 2400,
2404, 96 L. Ed. 2d 282 (1987); Combs v. Corrections Corp., 977 F. Supp. 799, 802 (W.D. La.
1997). 

 Courts consider four factors in determining whether a prison regulation is rationally related
to a legitimate penological interest: 1) whether there is a legitimate rational connection between the
prison regulation and the government interest, 2) whether the prisoners have alternative means of
exercising the constitutional right at issue, 3) the impact that accommodation of the constitutional
right would have on the other inmates, guards, and prison resources in general, and 4) the availability
of alternatives to the regulation. Turner v. Safley, 482 U.S. 78, 89-90, 107 S. Ct. 2254, 2262-63,
96 L. Ed. 2d 64 (1987). A law that is religion-neutral and generally applicable does not violate the
Free Exercise Clause even if it incidentally affects religious practice. Thiry v. Carlson, 78 F.3d
1491, 1496 (10th Cir.), cert. denied, 519 U.S. 821 (1996) (citing Employment Div. v. Smith, 494
U.S. 872, 878-79, 110 S. Ct. 1595, 1600, 108 L. Ed. 2d 876 (1990)). Further, courts generally accord
great deference to prison officials' adoption and execution of policies, regulations, and practices
relating to the preservation of internal order, discipline, and security within the prison environment. 
Thornburgh v. Abbott, 490 U.S. 401, 407-08, 109 S. Ct. 1874, 1878-79, 104 L. Ed. 2d 459 (1989);
O'Lone, 482 U.S. at 349, 107 S. Ct. at 2404. Wardens are entitled to take precautions against drugs
and weapons. Bell v. Wolfish, 441 U.S. 520, 551, 99 S. Ct. 1861, 1880, 60 L. Ed. 2d 447 (1979);
Johnson v Phelan, 69 F.3d 144, 146 (7th Cir. 1995), cert. denied, 519 U.S. 1006 (1996). 

 A warden must accommodate conflicting interests. The State's interest in security is a solid
reason to reject an inmate's claim of modesty, even in the name of the First Amendment. Modesty
standards and nudity taboos are an established part of the exercise of Islam, as well as many other
religions. However, Appellees provided evidence of problems associated with contraband. 
Obviously, there is a rational connection between the searches and the State's legitimate justification,
security. Although prisoners have no alternative means of exercising the tenet forbidding their being
viewed by females not their wives, this factor alone does not outweigh the legitimate penological
objective at issue. See O'Lone, 482 U.S. at 351-52, 107 S. Ct. at 2406. Accommodating
Appellant's constitutional right would require a redistribution of prison resources, that is,
correctional officers. Here, we must defer to the decisions of prison officials who, in light of equal
employment opportunity laws, considered their budget and their personnel pool and determined the
best manner in which to allocate these resources. See O'Lone, 482 U.S. at 351-53, 107 S. Ct. at
2406-07. Finally, Appellees' evidence shows that strip searches by male corrections officers are not
an available alternative due to the large number of strip searches required and limited availability
of male staff members. 

 Administrative Directive 03.22 (rev. 6) is religion-neutral and generally applicable to all
inmates. The complained-of searches, done pursuant to that directive, are neutral and generally
applicable. Prison officials are not required by the Constitution to sacrifice legitimate penological
objectives in favor of a male inmate's request to not be seen in the nude by female corrections
officers. See id. Conversely, Appellant is not relieved, by the right of free exercise, from submitting
to strip searches by female corrections officers. See Smith, 494 U.S. at 879, 110 S. Ct. at 1600. 
Accordingly, Appellees established that they did not violate Appellant's rights guaranteed by the
Free Exercise Clause of the First Amendment and they are entitled to judgment on that claim as a
matter of law. See Tex. R. Civ. P. 166a(c). 

 Appellant contends that he raised a claim for negligent implementation under the Texas Tort
Claims Act, that it was not addressed in Appellees' motion for summary judgment, and therefore,
the trial court erred in granting summary judgment against him on that claim. Assuming his petition
could be read as raising such a claim, Appellees, the only defendants before the trial court, as
opposed to unserved defendants, are all individuals. Appellees included in their motion for summary
judgment the argument that individuals cannot be sued under the Texas Tort Claims Act. The Act
only provides for a waiver of governmental immunity in three areas and does not provide for
recovery against individuals employed by the State. Aguilar v. Chastain, 923 S.W.2d 740, 744
(Tex. App.-Tyler 1996, writ denied). Further, state law does not recognize a claim for negligent
implementation. See Thompson v. Texas Dept. of Crim. Justice-Institutional Div., 33 S.W.3d 412,
415 (Tex. App.-Houston [1st Dist.] 2000, pet. denied). Thus, the motion for summary judgment
covered this claim to the extent it applied to Appellees.

 Finally, with regard to Appellant's retaliation claim, our review of the live pleading leads us
to conclude that the only claim of retaliation was made against unserved defendants. Therefore, any
misinterpretation by Appellees regarding that claim is immaterial and it need not be addressed by
the summary judgment. 

 After Appellees established the right to summary judgment, the burden shifted to Appellant
to raise a fact issue. However, there is nothing in the record indicating the trial court granted leave
for a late filing of his response. Therefore, we must presume the trial court did not consider
Appellant's response and we do not consider his late filed response. INA of Tex. v. Bryant, 686
S.W.2d 614, 615 (Tex. 1985). Accordingly, the trial court did not err in granting summary judgment
for Appellees. As we have determined that the summary judgment was properly granted on the
grounds discussed, we need not address Appellant's arguments concerning the remaining grounds. 
We overrule Appellant's first issue.

 In his second issue, Appellant asserts the trial court erroneously awarded judgment to
Appellees on claims not addressed in their motion, including a Fourth Amendment claim, a claim
that Williamson failed to properly supervise and train correctional officers, negligent implementation
of policy under the Tort Claims Act, and his complaint that he had to walk nude to the shower. He
contends it was error for the trial court to include in the judgment the statement: "All relief not
specifically granted by this order is DENIED."

 We agree that the above-quoted language should not have been included in the judgment. 
Such language, ordinarily known as a "Mother Hubbard" clause, cannot be used in an order issued 
without a full trial to indicate finality. Nash v. Harris County, 63 S.W.3d 415, 416 (Tex. 2001). 
However, we have carefully reviewed his live pleading and determine that Appellant did not include
a Fourth Amendment claim or a claim that Williamson failed to properly supervise and train
correctional officers. We have addressed the negligent implementation of policy claim. We construe
the complaint that he had to walk nude to the shower as being subsumed under his First Amendment
complaint and disposed of by the summary judgment. (1) Accordingly, the summary judgment
addressed all claims that were asserted against Appellees in Appellant's live pleading. We modify
the judgment to delete the Mother Hubbard clause. However, its inclusion is harmless error. We
overrule issue two.

 As modified, we affirm the trial court's judgment.


 SAM GRIFFITH 

 Justice



Opinion delivered June 21, 2002.

Panel consisted of Worthen, J., and Griffith, J.







 



(DO NOT PUBLISH)








COURT OF APPEALS


TWELFTH COURT OF APPEALS DISTRICT OF TEXAS


JUDGMENT


JUNE 21, 2002



NO. 12-01-00052-CV



LAWRENCE EDWARD THOMPSON,


Appellant


V.


CHERYL J. STANSBERRY, CHARLES WILLIAMSON,


AND GARY JOHNSON,


Appellees



_____________________________________________________________________________


 Appeal from the 349th Judicial District Court


 of Houston County, Texas. (Tr.Ct.No. 00-0006)


_____________________________________________________________________________



 THIS CAUSE came on to be heard on the appellate record and the briefs filed
herein; and the same being inspected, it is the opinion of this court that the judgment of the trial court
below should be modified and, as modified, affirmed.

 It is therefore ORDERED, ADJUDGED and DECREED that the judgment
of the court below be modified to delete the following sentence: "All relief not specifically granted
by this order is DENIED." As modified, the judgment of the trial court is affirmed. It is further
ORDERED that this decision be certified to the trial court below for observance.

 Sam Griffith, Justice.

 Panel consisted of Worthen, J., and Griffith, J.

1. We note that Appellant's petition also includes various complaints regarding disciplinary actions,
discrimination, and retaliation against him involving only correctional officers who were not effectively made parties
to this suit.